UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN CAIRNS and NANCY CAIRNS,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>COUNTY OF EL DORADO,<br><br>　　　　Defendant. | No. 2:15-cv-00814-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiffs Kevin and Nancy Cairns (collectively, "Plaintiffs") allege Defendant County of El Dorado ("Defendant") deprived them of their civil rights by arresting and prosecuting Plaintiff Kevin Cairns in 2010 and 2011. Pending before the Court is Defendant's Motion to Dismiss. ECF No. 7. Plaintiffs filed an Opposition (ECF No. 8), and Defendant filed a Reply (ECF No. 9). For the reasons that follow, Defendant's Motion to Dismiss is GRANTED.[1]

///

///

///

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. See E.D. Cal. Local R. 230(g).

# BACKGROUND[2]

Plaintiffs, a husband and wife, moved to Pollock Pines, California in 2004 and later opened a restaurant on Highway 50 ("the restaurant"). On several occasions, motorists used the restaurant parking lot and building as a toilet (i.e., urinating and vomiting in and on it), refused to leave despite Plaintiffs' demands, and verbally and physically attacked Plaintiffs. This case arises out of three separate incidents that occurred in the restaurant parking lot in 2010 and 2011 and the related arrests, indictment, and conviction of Plaintiff Kevin Cairns ("Kevin").

### A.    The First Incident

On November 28, 2010, a motorist stopped his pickup truck in the restaurant parking lot. A child in the truck was vomiting, and the vomit was dripping onto Plaintiffs' parking lot. Kevin ordered the motorist to leave. When the motorist refused, he and Kevin exchanged harsh words. After the motorist told Kevin he would "kill" him, Kevin threw a chunk of ice into the bed of the motorist's truck and told Plaintiff Nancy Cairns ("Nancy") to get the family's large dog for protection.

Seconds later, another passenger in the truck—who was six-feet two-inches tall, approximately 250 pounds, and "far bigger" than Kevin—exited the truck. The passenger threw a snowball at Plaintiffs' dog and threw a chunk of ice at Kevin. The chunk of ice hit Kevin in the head, causing a concussion and, several hours later, vomiting. Kevin then grabbed a piece of wood with nails sticking out of it from a nearby refuse pile; he approached the pickup truck and struck the top of the bedliner on the tailgate, using the side without the protruding nails. Kevin claims he was acting purely in self-defense.

The motorist called the El Dorado County Sheriff's Office and stated that he wanted to "kill" Kevin. Shortly thereafter, a deputy arrived on scene. The deputy let the

///

---

[2] This statement of facts is based entirely on the allegations in Plaintiffs' Complaint (ECF No. 1).

motorist and his passengers go, but arrested Kevin and took him to the El Dorado County Jail.

### B. The Second Incident

On February 11, 2011, a vehicle entered Plaintiffs' parking lot, and one of the individuals inside immediately vomited onto the ground. Plaintiffs confronted the individual and demanded that she leave the property. The individual returned to the vehicle, grabbed a bag filled with vomit, and threw it toward Nancy while calling her a "fucking bitch." Kevin then threw an orange traffic cone at the motorists' vehicle. When the cone landed in the vehicle, the non-vomiting motorist exited the vehicle and "pursued [Kevin] in menacing fashion."

Kevin retreated into the restaurant and called the Sheriff's Office. The responding deputy arrived at the restaurant and conducted interviews. Although the motorists were allowed to leave, the deputy arrested Kevin and booked him at the County Jail.

### C. The Third Incident

On March 11, 2011, a vehicle with a vomiting child inside entered the restaurant parking lot. When the child's father went into the restaurant and asked for a plastic bag and paper towels, Nancy told him to leave. While this was happening, the child's mother took the child out of the vehicle and allowed him to vomit in the parking lot. Kevin saw the mother "hiding" on the other side of the family car and demanded she leave the property. When the father emerged from the restaurant, Nancy followed him with a video recording device to document that she and Kevin were defending themselves and their property. Nancy heard the father tell the mother to ignore the instructions to leave Plaintiffs' property. Plaintiffs and the family exchanged harsh words. Plaintiffs called the father or mother "pigs," "a bunch of pigs," or "fat pigs" for vomiting on their property.

A deputy from the Sheriff's Office later contacted Kevin by phone. Kevin demanded that the father and mother of the child be arrested for trespassing or at least issued a citation. Instead, on March 15, 2011, a deputy arrested Kevin and booked him in the County Jail. Kevin's bail was set at $500,000.00.

**D.     The Criminal Prosecution of Kevin**

On April 1, 2011, the El Dorado County District Attorney ("the District Attorney") arraigned Kevin on six felony charges[3]:  (1) assault by means of force likely to produce great bodily injury; (2) vandalism exceeding $400.00; (3) exhibiting a deadly weapon; (4) assault by means of force likely to produce great bodily injury; (5) disturbing the peace by offensive language; and (6) disturbing the peace by loud noise.[4]  Def.'s Req. for Jud. Notice ("RJN"), Information, Ex. 3, ECF No. 7-5.  On March 15, 2012, a jury found Kevin guilty as to the third and fifth counts and guilty of a lesser included offense (misdemeanor assault and brandishing) as to counts one, two, and four.[5]  RJN, Minute Order, Ex. 5, ECF No. 7-7; RJN, People v. Cairns, Ex. 6, ECF No. 7-8.

On July 8, 2014, the California Court of Appeal affirmed the conviction as to count five (disturbing the peace) but reversed as to all other counts.  Id.  October 31, 2014, the El Dorado County Superior Court affirmed Plaintiff's conviction as to count five and sentenced him to time served.  RJN, Minute Order, Ex. 8, ECF No. 7-10.

**E.  Plaintiffs' Federal Complaint**

Plaintiffs filed their Complaint in this Court on April 15, 2015.  Pls.' Compl., ECF No. 1.  The Complaint includes identifies four causes of action, each of which is based on 42 U.S.C. § 1983:  (1) "First Amendment Retaliation"; (2) "Unreasonable Search and Seizure/Wrongful Arrest/Wrongful Conviction"; (3) "Entity Liability/Unconstitutional Policies and Procedures"; and (4) "Entity Liability/Unconstitutional Practices."  Compl. 10-12.

///

///

---

[3] Although Plaintiffs allege that Kevin was arraigned on seven felony charges, exhibits attached to Defendant's Request for Judicial Notice in Support of their Motion (ECF No. 7-2) identify only six felony charges.  Compl. ¶¶ 21, 23; Def.'s Req. for Jud. Notice, Minute Order, Ex. 4, ECF No. 7-6.  Because Plaintiffs do not contest Defendant's Request for Judicial Notice, Defendant's Request is GRANTED.

[4] The first, second, and third charge were based on the first incident; the fourth charge was based on the second incident; the fifth and sixth charge were based on the third incident.

[5] The prosecutor dismissed count six during trial.

4

Defendant seeks dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[6]

## STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Id. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature

---

[6] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

1  of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles Alan
2  Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough facts
3  to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have
4  not nudged their claims across the line from conceivable to plausible, their complaint
5  must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed even if it
6  strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery
7  is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236
8  (1974)).

9       A court granting a motion to dismiss a complaint must then decide whether to
10  grant leave to amend.  Leave to amend should be "freely given" where there is no
11  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
12  to the opposing party by virtue of allowance of the amendment, [or] futility of the
13  amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.
14  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
15  be considered when deciding whether to grant leave to amend).  Not all of these factors
16  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .
17  carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
18  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that
19  "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,
20  Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,
21  1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.
22  1989) ("Leave need not be granted where the amendment of the complaint . . .
23  constitutes an exercise in futility . . . .")).

24
25                                              **ANALYSIS**
26
27       Defendant advances several arguments in the pending Motion.  This Order
28  addresses only those that the Court finds dispositive.

### A. First Amendment Retaliation

Plaintiffs first cause of action is for "First Amendment Retaliation." Compl. at 10. Defendant see'ks dismissal of the claim on the grounds that it is inadequately pled.

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out . . . ." Hartman v. Moore, 547 U.S. 250, 256 (2006). To state a claim for retaliation—whether based on a retaliatory arrest or a retaliatory prosecution—a plaintiff must allege and prove the absence of probable cause. See id. at 264; Beck v. City of Upland, 527 F.3d 853, 864 (9th Cir. 2008) ("We see no reason to limit Hartman's probable cause requirement solely to First Amendment retaliatory arrest and prosecution cases.").

Here, Plaintiffs' First Amendment retaliation claims are based on alleged retaliatory arrests and a retaliatory prosecution. Specifically, Plaintiffs contend that the arrests and prosecution of Kevin were in retaliation for Plaintiffs' "complaining to law enforcement." See Compl. ¶¶ 4, 26. As explained in greater detail in the paragraphs that follow, Plaintiffs' First Amendment retaliation claims are inadequately pled because the Complaint makes clear that there was probable cause for the arrests and prosecution.[7]

### 1. Probable Cause to Arrest

> Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested. Alternatively, this court has defined probable cause as follows: when under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.

---

[7] In the Opposition, Plaintiffs argue that "Defendants are attempting to place the Motion to Dismiss standard on its head, as they are asking this Court to construe Plaintiffs' Complaint in the light most favorable to the defense." ECF No. 8 at 9. Plaintiff is of course correct that, on Defendant's Motion to Dismiss, the Court must construe the allegations in the Complaint in the light most favorable to Plaintiff. See Cahill, 80 F.3d at 337-38. However, "the court is not required to ignore facts alleged in the complaint that undermine the plaintiff's claims." Slaney v. Int'l Amateur Athletic Fed'n, 244 F.3d 580, 597 (7th Cir. 2001).

United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (citations and quotation marks omitted).

Plaintiffs' Complaint makes clear that there was probable cause for each of the three arrests. As to the first arrest, Kevin had grabbed a piece of wood with nails sticking out of it, approached a vehicle occupied by a child and two men, and struck the vehicle. Compl. at ¶ 14. The second arrest occurred after Kevin threw an orange traffic cone into an occupied vehicle. Id. at ¶ 16. As to the third arrest, the Complaint states that Kevin had repeatedly called a motorist a "pig," "fat pig," or the motorist and his wife "a bunch of pigs." Id. at ¶ 18. Under the totality of circumstances known to the arresting deputies, they could have prudently determined that there was a fair probability that Kevin had committed a crime on each and every occasion (e.g., assault, vandalism, exhibiting a deadly weapon, or disturbing the peace).

Because the Complaint makes clear that there was probable cause to arrest Kevin, the Complaint fails to state a First Amendment retaliatory arrest claim.

**2. Probable Cause to Prosecute**

Similarly, the Complaint makes clear that there was probable cause to prosecute Plaintiff on each and every charge. See generally Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in his discretion").

As to the first, second, and third counts, the Complaint states that Kevin struck an occupied vehicle with a piece of wood with protruding nails. Compl. at ¶ 14. Such conduct provided sufficient probable cause to charge Plaintiff with assault, vandalism, and brandishing. For count four, Kevin's throwing an orange traffic cone into an occupied vehicle was sufficient probable cause to believe Kevin committed assault by means of force likely to produce great bodily injury. See id. at ¶ 16. As to counts five and six, the Complaint makes clear that there was probable cause to believe that Kevin had disturbed the peace by offensive language and loud noise, as he had repeatedly

called a motorist a "pig," "fat pig," or the motorist and his wife "a bunch of pigs."  See id. at ¶ 18.  Thus, because the Complaint makes clear that there was probable cause to prosecute Kevin, the Complaint fails to state a First Amendment retaliatory prosecution claim.  See Pangelinan v. Wiseman, 370 F. App'x 818, 819 (9th Cir. 2010) ("Pangelinan's claim for retaliatory prosecution was properly dismissed because there was probable cause for the prosecution.").

Accordingly, Plaintiffs' first cause of action is DISMISSED.  Because granting Plaintiff leave to amend would constitute an exercise in futility, the dismissal is without leave to amend.

### C. Plaintiffs' Second Cause of Action

Plaintiffs' second cause of action alleges "unreasonable search and seizure/wrongful arrest/wrongful conviction."  Compl. at 11.  Although Plaintiffs group them together, there are two distinctive claims within the second cause of action:  one challenging Kevin's arrests, and another challenging his prosecution.  Defendant seeks dismissal of the second cause of action on the ground that it inadequately pled.

#### 1. Wrongful Arrest[8]

The Court must dismiss Plaintiffs' wrongful arrest claim because the Complaint makes clear that there was probable cause for the seizures.  "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification."  Dubner v. City and Cnty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001).  As explained above, the Complaint makes clear that there was probable cause to arrest Kevin on each of the three instances described in the Complaint.  Accordingly, the Complaint fails to state a wrongful arrest claim.

///

---

[8] Although the cause of action includes the language "unreasonable search and seizure," the Complaint does not identify any unlawful searches of Plaintiffs or their property.  Accordingly, the Court construes the "unreasonable search and seizure" claim only as a challenge to the allegedly unlawful arrests.

### 2. Wrongful Conviction

The Court construes Plaintiffs' claim for "wrongful conviction" as a claim for "malicious prosecution."  See Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 347 (2014) (citations omitted) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."). "To prove a claim for malicious prosecution in California, a plaintiff must prove that the underlying prosecution:  (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice."  Conrad v. United States, 447 F.3d 760, 767 (9th Cir. 2006) (internal citations and quotation marks omitted).

First, Plaintiffs have not pled facts sufficient to show that the prosecution was pursued to a legal termination in Kevin's favor.  The allegation that the California Court of Appeal reversed "nearly all" of the charges against Kevin is insufficient to establish that the underlying prosecution terminated in his favor.  See Vang v. Decker, 607 F. App'x 728, 729 (9th Cir. 2015) ("The entire action must terminate in a plaintiff's favor in order for a plaintiff to maintain a claim for malicious prosecution.").  Second, as explained above, the Complaint makes clear that there was probable cause to prosecute Kevin.  The Complaint therefore fails to state a malicious prosecution claim.

Plaintiffs' second cause of action is DISMISSED.  Because granting Plaintiffs leave to amend would constitute an exercise in futility, the dismissal is without leave to amend.

### C. Municipal Liability

Plaintiffs' third and fourth causes of action are Monell claims.  See generally Monell v. Dep't Soc. Servs. City of N.Y., 436 U.S. 658 (1978).  The Ninth Circuit recently summarized the relevant law:

> A municipality is responsible for a constitutional violation, however, only when an action taken pursuant to an official municipal policy of some nature caused the violation. . . . [T]he official municipal policy in question may be either formal or informal.

> A formal policy exists when a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. . . .
>
> An informal policy, on the other hand, exists when a plaintiff can prove the existence of a widespread practice that, although not authorized by an ordinance or an express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law. Such a practice, however, cannot ordinarily be established by a single constitutional deprivation, a random act, or an isolated event. Instead, a plaintiff . . . must show a pattern of similar incidents in order for the factfinder to conclude that the alleged informal policy was so permanent and well settled as to carry the force of law.

Castro v. Cnty. of L.A., 797 F.3d 654, 670-71 (9th Cir. 2015) (internal bracketing, citations, and quotation marks omitted).

Here, Plaintiffs allege the arrests and prosecution were the result of Defendant's "policies and procedures for dealing with disfavored [El Dorado County] residents . . . ." Compl. at ¶ 36. However, there are no allegations in the complaint suggesting that Defendant had a formal policy with respect to "dealing with disfavored" residents. As to the existence of an informal policy, Plaintiffs have not alleged a widespread practice "so permanent and well settled as to constitute a custom or usage with the force of law." Castro, 797 F.3d at 671.

Moreover, even if Plaintiffs had sufficiently alleged the existence of an official municipal policy, dismissal of the Monell claims would still be proper because the Complaint fails to state a § 1983 claim against Defendant. See Dixon v. Wallowa Cnty., 336 F.3d 1013, 1021 (9th Cir. 2003) (explaining that the lack of a constitutional deprivation "precludes section 1983 municipal liability regardless of whether there was a County policy"). Accordingly, the third and fourth causes of action are also DISMISSED without leave to amend.

///

///

///

## CONCLUSION

Defendant's Motion to Dismiss (ECF No. 7) is GRANTED, and Plaintiffs' Complaint is DISMISSED without leave to amend. The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated: December 22, 2015

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT